UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C. DWAYNE GILMORE,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>D. AUGUSTUS, et al.,<br><br>　　　　Defendants. | 1:12-cv-00925-LJO-GSA-PC<br><br>ORDER DENYING PLAINTIFF'S REQUEST FOR LEAVE TO PROPOUND ADDITIONAL INTERROGATORIES UPON DEFENDANT LOCKARD<br>(Doc. 58; also resolves Doc. 59.) |

**I.　BACKGROUND**

C. Dwayne Gilmore ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on June 7, 2012. (Doc. 1.) This action now proceeds on the First Amended Complaint filed on March 8, 2013, against defendants Correctional Officer (C/O) C. Lockard, C/O C. Lopez, C/O J. Hightower, and C/O J. J. Torres for excessive force, and against defendant C/O J. J. Torres for denial of adequate medical care, in violation of the Eighth Amendment.[1] (Doc. 12.) This case is now in the discovery phase.[2]

---

[1] On November 18, 2013, the court issued an order dismissing all other claims and defendants from this action for failure to state a claim. (Doc. 17.) Defendants Lieutenant D. Augustus, Sergeant J. S. Diaz, Licensed Vocational Nurse (LVN) A. Serna, LVN B. Ismat, LVN I. Bari, LVN J. Canada, LVN Z. Nartume, and John Doe were dismissed from this action based on Plaintiff's failure to state any claims against them upon which relief may be granted under §1983, and Plaintiff's claims based on supervisory liability and claims for conspiracy and violation of due process were dismissed from this action for Plaintiff's failure to state a claim under § 1983. (Id.)

On July 2, 2014, Plaintiff filed a request for leave to propound three additional interrogatories on defendant C. Lockard ("Defendant"). (Doc. 58.) On July 23, 2014, Defendant filed an opposition to the request. (Doc. 62.) On August 6, 2014, Plaintiff filed a reply to the opposition. (Doc. 66.)

## II. PLAINTIFF'S ALLEGATIONS AND EXCESSIVE FORCE CLAIM AGAINST DEFENDANT LOCKARD

### A. <u>Allegations</u>

The events at issue occurred at Kern Valley State Prison in Delano, California, when Plaintiff was incarcerated there.

On July 8, 2010, Plaintiff had just finished his inmate porter duties when he heard a commotion behind him and noticed an incident occurring between two handcuffed inmates and an officer. An alarm sounded, and Plaintiff got down on the ground. C/O Lockard aimed his Launcher Gun at Plaintiff's right thigh and shot him with a sponge round. Plaintiff was struck in the front inner right lower thigh/upper kneecap area, ripping a large hole in his leg. Plaintiff fell backwards onto the floor, actively bleeding. C/O Lockard called down to C/O Lopez, "Check Gilmore. I shot him. He was trying to get involved." Amd Cmp, Doc. 12 at 7 ¶21. Plaintiff was lying defenseless on the floor, in immense pain, attempting to put pressure on the wound. C/O Lopez walked over to Plaintiff and stood over him, stating, "You want to get involved motherf---er? You're involved now." Amd Cmp at 7 ¶23. C/O Lopez then sprayed Plaintiff with pepper spray without justification, in his face and up and down his backside. C/O Hightower approached Plaintiff and also began spraying him with pepper spray. Defendants Lopez and Hightower both emptied their pepper spray canisters on Plaintiff.

C/O Torres then handcuffed Plaintiff behind his back and aggressively yanked Plaintiff up from the floor. Plaintiff lost consciousness from pain but then awoke and began to yell that he was injured, bleeding, and needed medical attention. Plaintiff began to feel severe burning from the pepper spray. C/O Torres said, "You're not getting s--t," forced Plaintiff to walk

---

[2] On April 25, 2014, the Court issued a scheduling order in this action, opening discovery and establishing a deadline of December 25, 2014 for the completion of discovery. (Doc. 36.)

while in pain, and then shoved Plaintiff's face into the concrete wall, causing Plaintiff's glasses to chip and scratch Plaintiff's face, and busting Plaintiff's bottom lip.  Amd Cmp at 8 ¶¶34-36.  LVN's Canada, Serna, Ismat, and Nartume, who had all responded to the alarm, refused to examine Plaintiff on-site or direct Plaintiff's transportation to Medical Service.  Sgt. Diaz instructed C/O Torres to escort Plaintiff to the Program Office, and Plaintiff was forced to walk, in obvious pain, to the Program Office patio area.  C/O Torres intentionally led Plaintiff into the metal door frame, causing Plaintiff to hit his mouth, aggravating his busted and swollen bottom lip.  C/O Torres told Plaintiff, "You gotta watch where you're going, Gilmore," and began to chuckle.  Amd Cmp at 9 ¶44.  C/O Torres forced Plaintiff to continue walking, and intentionally led him into another metal door frame, smacking Plaintiff's face hard into the door frame.  C/O Torres said, "Gilmore, why do you keep doing that?  I'm going to have to write you up for self-mutilation," and then snickered.  Amd Cmp at 10 ¶47.

      Plaintiff's right knee began to give out and he cried out to C/O Torres, "I can't walk no more, my knee is broken," and began to collapse.  Amd Cmp at 10 ¶¶48, 49.  C/O Torres yanked Plaintiff upright and threatened to harm him, stating, "You try to go down on me and I'm going to slam your [expletive] on the ground.  Now walk!"  Amd Cmp at 10 ¶¶50, 51.  Fearful, Plaintiff continued to limp while in immense pain.  C/O Torres intentionally led Plaintiff into the Pedestrian Gate steel door, striking Plaintiff's right kneecap area, causing Plaintiff to scream out in pain and almost lose consciousness.  C/O Torres led Plaintiff past Medical Service to the front of the Program Office, then forced him down onto the hot asphalt, stating, "Sit there!"  Amd Cmp at 11 ¶56.  Plaintiff screamed in pain from his knee injury and the burning of the pepper spray, for approximately 27 minutes.  Lieutenant Augustus said, "Gilmore, I'm right here for you;" C/O Bari commented, "He looks like he's burning;" and C/O Torres said, "He sure is!"  Amd Cmp at 11 ¶¶59-61.

      Plaintiff was led to the front of Medical Services and forced down onto the hot asphalt.  Plaintiff continued to beg, cry and plea to be decontaminated from the pepper spray, and for medical attention.  C/O Torres said, "After we take pictures."  Amd Cmp at 12 ¶67.  Water was poured over Plaintiff's gunshot wound, clearing away the evidence of excessive bleeding.

Plaintiff was forced into a chair in Medical Services, where photographs were taken of Plaintiff's wound. While the photos were being taken, defendant John Doe pulled open Plaintiff's wound, intentionally causing Plaintiff to lose consciousness. Plaintiff regained consciousness and was led outside of Medical Service by C/O Torres, who told Plaintiff, "Go down on your knees if you want to be decontaminated." Amd Cmp at 13 ¶75. Plaintiff went down on his left knee, leaving his right leg stretched out. C/O Torres told Plaintiff, "No! Both knees or you're not getting any water." Amd Cmp at 13 ¶77. Plaintiff bent his right leg and placed his knee onto the hot asphalt, causing excruciating pain. C/O Torres then began to decontaminate Plaintiff by spraying him with water. Every minute or so, C/O Torres would stop spraying Plaintiff and say, "Tell me you want more!" and snicker. Amd Cmp at 14 ¶80. Defendant Sgt. Diaz asked C/O Torres, "You're just now decontaminating him?" Amd Cmp at 14 ¶81. C/O Torres decontaminated Plaintiff for about five minutes and then placed him in a holding cell. Still burning and blind from the pepper spray, Plaintiff began to self-decontaminate without instructions. The blood vessels in Plaintiff's eyes had burst. At Delano Regional Medical Center, Plaintiff's wound was x-rayed for broken bones, and the wound was stapled shut. Plaintiff was housed in administrative segregation at KVSP on the false charge of assault on a peace officer.

On July 9, 2010, at his initial hearing, Plaintiff denied the charge and countercharged cruel and unusual punishment, denial of due process, and conspiracy. On July 20, 2010, Plaintiff was issued a Rules Violation Report authored by defendant C/O C. Lopez, falsely reporting that Plaintiff had assaulted a peace officer. On August 18, 2010, at his disciplinary hearing, Plaintiff pled not guilty and was found guilty.

Plaintiff continues to experience itchiness, numbness, pain, stiffness, and throbbing in his right knee as a result of the gunshot wound.

### B. Excessive Force Claim – Eighth Amendment

The court found that Plaintiff states a cognizable claim against defendant Lockard for use of excessive force in violation of the Eighth Amendment. (Doc. 13.)

///

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

### III.    REQUEST TO PROPOUND ADDITIONAL INTERROGATORIES

#### A.    Legal Standard

Pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)." Fed. R. Civ. P. 33(a). Rule 26(b)(2)(A)

provides that "[b]y order, the court may alter the limits in these rules on the number of . . . interrogatories. Fed. R. Civ. P. 26(b)(2)(A). However, "the court must limit the frequency or extent of discovery . . . if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

"'[B]road discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.'" Dichter-Mad Family Partners, LLP v. U.S., 709 F.3d 749, 751 (9th Cir. 2013) (quoting Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002) (alteration omitted)); accord Goehring v. Brophy, 94 F.3d 1294, 1305 (9th Cir. 1996)). "A plaintiff seeking discovery must allege 'enough fact to raise a reasonable expectation that discovery will reveal' the evidence he seeks." Dichter-Mad Family Partners, LLP, 709 F.3d at 751 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955 (2007)); see also Gager v. United States, 149 F.3d 918, 922 (9th Cir. 1998) ("It is well-established that the burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists.")

**Parties' Positions**

Plaintiff requests leave to propound three additional interrogatories upon defendant Lockard, for a total of twenty-eight interrogatories. Plaintiff has submitted his proposed "First Request for Interrogatories to defendant Lockard" containing the twenty-eight interrogatories, for the court's review. (Exhibits to Request, Doc. 58 at 4-22.) Plaintiff argues that the twenty-eight interrogatories are not unreasonably cumulative or duplicative, and that he cannot obtain the information from some other source that is more convenient, less burdensome, or less expensive. Plaintiff also argues that the burden and expense of responding to the

interrogatories is within reason, considering the importance of the discovery to the resolution of this case.

Defendant Lockard asserts that Plaintiff served the twenty-eight interrogatories upon Defendant on June 30, 2014, before he filed the July 2, 2014 request to propound additional interrogatories.  In opposition to Plaintiff's request, Defendant first argues that Interrogatories Nos. 1-4 seek irrelevant information concerning whether non-defendant Officers Herrera, King, and Torres were properly allowed in the building to conduct a search of Plaintiff's cell and whether they properly conducted the search.  Defendants argue that whether the cell search was properly conducted is irrelevant, and the relevant inquiry in this matter is whether Defendants acted reasonably in perceiving a threat from Plaintiff, and whether Defendants acted reasonably to the perceived threat of Plaintiff.

Defendant also argues that Plaintiff's proposed interrogatories are mostly compound, effectively resulting in fifty-four interrogatories to defendant Lockard.  Defendant asserts that almost every interrogatory contains at least one subpart, and a few contain multiple subparts.

Defendant also argues that Plaintiff's proposed Interrogatory No. 10 seeks information that could jeopardize the CDCR's institutional safety and security.  Defendant asserts that the interrogatory seeks information pertaining to institutional procedures for loading weapons and quelling disturbances, which inmates could use to manipulate situations, stage altercations, potentially overcome staff, and otherwise jeopardize safety and security.

In reply, Plaintiff reasserts the arguments in his request and also argues that the proposed interrogatories are not compound.  Plaintiff argues that Defendant seeks to delay prosecution of this action, take Plaintiff to task, and vex Plaintiff.  Plaintiff argues that Interrogatories Nos. 1-4 are relevant because they concern whether Defendant's decision to allow Officers Herrera, King and Torres into the building was lawful, and will lead to evidence "whether the Defendant could reasonably believe his decision, which resulted in him shooting Plaintiff, was tempered."  (Request, Doc. 66 at 5:21-27.)  Plaintiff also argues that Interrogatories Nos. 1-4 will lead to evidence whether the decisions precipitating the cell search ///

address the objective need for force, the relationship between any such need, the amount of force actually used, and the threat reasonably perceived by defendant Lockard.

Plaintiff argues that his proposed Interrogatory No. 10 does not seek information that could jeopardize institutional safety and security, because inmates cannot use the information to manipulate situations. Plaintiff argues that Defendant's contention that prisoners could use information about correctional officers' handling of launcher guns to stage altercations or overcome staff is "ridiculous." (Request, Doc. 66 at 8:2.) Plaintiff asserts that the requested information is useless to prisoners because the guns are locked and secured in safety and security towers, which prisoners cannot access.

### Discussion

The court has reviewed Plaintiff's twenty-eight proposed interrogatories and finds merit in Defendant's argument that many of them are impermissibly compound or contain multiple subparts, causing them to greatly exceed twenty-eight interrogatories. For example, Interrogatory No. 1 reads as follows:

> Before you allowed Officers J. J. Torres, S. Herrera, and M. King to enter Facility A, Building 8, on Thursday, July 8, 2010, were you notified and instructed by your immediate supervisor or any supervisor that the Officers [were] authorized to conduct a specific cell search/inspection of cell 132 and its occupants? If no, please explain why you allowed the Officers to enter the building to conduct the search. If yes, please state the time of the notification, name of the supervisor and the instructions given you.

This interrogatory consists of at least two separate subparts, depending on whether Defendant answers "yes" or "no" to the first subpart.

Interrogatory No. 15 contains five separate subparts if Defendant answers "yes" to the first subpart:

> At any time after you discharged the sponge round at Plaintiff, did you leave away from the control booth/tower window? If yes, please explain – a) why; b) did you return to the control booth/tower window; c) how much time elapsed from when you left until you returned; and d) why this fact was never reported by you.

Similarly, most of Plaintiff's proposed interrogatories are either compound or contain multiple subparts, which is impermissible. Based on this finding alone, the court shall deny Plaintiff's request for leave to propound the twenty-eight proposed interrogatories upon Defendant.

Defendant Lockard is not required to respond to any of the proposed twenty-eight interrogatories which were served upon him on June 30, 2014.

With respect to Interrogatories Nos. 1-4, the court finds them irrelevant to Plaintiff's claims in this action. This case now proceeds only against defendants C/O C. Lockard, C/O C. Lopez, C/O J. Hightower, and C/O J. J. Torres for excessive force, and against defendant C/O J. J. Torres for denial of adequate medical care, in violation of the Eighth Amendment.[3] Plaintiff makes no allegations in the First Amended Complaint concerning a cell search, and the Defendant's decision to conduct a cell search is not relevant to whether Defendant used excessive force on July 8, 2010, or whether there was an objective need for force.

Should Plaintiff wish to serve interrogatories upon defendant Lockard, he is advised to prepare only twenty-five new interrogatories, posing only one question per interrogatory. If Plaintiff wishes to serve more than twenty-five interrogatories, he should request leave of court before he serves the interrogatories.

**IV.     CONCLUSION**

Based on the foregoing and good cause appearing, IT IS HEREBY ORDERED that Plaintiff's motion to propound an excess number of interrogatories upon defendant Lockard, filed on July 17, 2014, is DENIED.

IT IS SO ORDERED.

Dated:   **August 27, 2014**            **/s/ Gary S. Austin**
                                  UNITED STATES MAGISTRATE JUDGE

---

[3] Defendant has stated that J. J. Torres is a non-defendant, because Torres is deceased. (Doc. 62 at 3:4-6, fn.1.) However, at this juncture, defendant J. J. Torres has not been dismissed from this action.